IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER **(901) 246-6205**, THAT IS STORED AT PREMISES CONTROLLED BY **AT&T** | Case No. 23-SW-252 |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, **April N. Moseley**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **901-246-6205**, (the **"TARGET TELEPHONE"**), that is stored at premises controlled by **AT&T**, a wireless telephone service provider headquartered at North Palm Beach, FL. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **AT&T** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a certified law enforcement officer, being duly certified in 2005 by the State of Tennessee and have worked in law enforcement for the Memphis Police Department ("MPD") since 2005. I have been a criminal investigator with the MPD for approximately nine and a half

years. I obtained my certification from the Memphis Police Training Academy and have obtained numerous other law enforcement certificates during my tenure in law enforcement. I currently hold the position of Sergeant and I am currently a Task Force Officer (TFO) assigned to the Federal Bureau of Investigation ("FBI"). During my law enforcement career, I have participated in numerous violent crime investigations. During these investigations, I have conducted and/or participated in the following: physical surveillance, victim and suspect interviews, the execution of search warrants, and reviews of surveillance videos. In addition, through my training, education, experience, I have become familiar with the manner in which bank robberies, business robberies and other violent crimes are typically conducted. I have affected the arrest of countless individuals for violations of the law, both misdemeanor and felonious in severity. I have participated in the execution of multiple search warrants leading to the seizure of items having evidentiary value; these search warrants aided in the successful arrest, and prosecution, of those involved in criminal activity.

3. I am currently assigned to the West Tennessee Violent Crimes Task Force. As part of my duties, I am statutorily charged with investigating violations of federal laws, to include bank robbery, interference with commerce by threats of violence (Hobbs Act robbery), and other violent criminal matters.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of **Title 18 U.S.C. 2119 Carjacking and Title 18 U.S.C. 924(c) Use of a Firearm**

**During a Crime of Violence** have been committed, are being committed, and will be committed by Adrian Pegues and unknown subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

### PROBABLE CAUSE

6. On July 25, 2022, at approximately 01:47 hours, Memphis Police Department responded to 1546 Madison Avenue, Memphis, Tennessee in reference to a carjacking.

7. Complainant T.W. called 911 and reported to Memphis Police Department Dispatch that he was on the phone with his friend, Victim D.P. when he heard D.P. being carjacked. T.W. later arrived on scene and stated to officers he was traveling northbound on I-240 near Lamar Avenue and observed D.P.'s 2022 BMW 428 traveling southbound on I-240.

8. On arrival, officers spoke with victim D.P. who stated he just purchased food from a business across the street and was getting ready to eat his food. D.P. exited his vehicle and was approached by two males at gun point. D.P. attempted to run from the two males but was unsuccessful. The two males wrestled D.P. to the ground, which caused minor injuries to D.P., then the two males retrieved D.P.'s car keys out of his right pocket. The two males entered D.P.'s 2022 BMW 428, bearing Tennessee license plate 22B-F10 and drove away from the area. D.P. stated the two males were occupying a silver four door vehicle which was occupied by a third individual who was driving the silver four door vehicle.

9. Witness C.K. stated to officers he heard D.P. screaming and observed two males armed with guns get in the 2022 BMW 428, bearing Tennessee license plate 22B-F10. Witness C.K. stated the 2022 BMW 428, bearing Tennessee license plate 22B-F10 left traveling westbound on Madison Avenue.

3

10. At approximately 02:18 hours, D.P. advised officers his 2022 BMW 428 could be tracked through the BMW app. D.P. was able to use the BMW app and provided officers with his vehicle's current location. D.P. provided the address of 2518 E. Hillview Drive, Memphis, Tennessee. Officers on the scene advised MPD dispatch the current GPS location on the 2022 BMW 428 and request MPD dispatch to send officers to that location to locate the 2022 BMW 428.

11. At approximately 02:25 hours, officers arrived at 2518 E. Hillview Drive, Memphis, Tennessee. Officers were able to locate the 2022 BMW 428, bearing Tennessee license plate 22B-F10 at that location unoccupied. D.P.'s 2022 BMW 428 was towed from the location and taken to 465 Klinke Avenue, Memphis, Tennessee (MPD Vehicle Storage) to be processed for evidence by MPD Crime Scene Unit.

12. The carjacking of D.P's 2022 BMW 428 was captured on surveillance footage from cameras at 1546 Madison Avenue, Memphis, Tennessee. This surveillance footage was downloaded and recovered as evidence.

13. On April 18, 2023, the aforementioned information was placed into warrant (Case No. 23-SW-184) signed by United States Magistrate Judge Annie T. Christoff for tower dump records for the following locations:

    a. July 25, 2022, 01:25 am CST 1546 Madison Ave Memphis, TN 35.13845, -90.00941

    b. July 25, 2022, 1:35 am CST, I-240 and Lamar Ave Memphis, TN 35.130373, -90.024023

    c. July 25, 2022, 02:18 am CST 2815 E. Hillview Dr Memphis, TN 35.07696, -89.99334

14. On May 20, 2023, AT&T provided cellular records in response to the search warrant.

15. TFO Moseley analyzed the records provided by **AT&T**. Initial review of the records shows the **TARGET TELEPHONE** associated in the area where the carjacking and recovery of the carjacked vehicle occurred during the time frames reported by the victim on July 25, 2022. The timeline is further corroborated by surveillance video recovered from the location of the carjacking and Memphis Police Department Body Worn Camera video from the recovery of the carjacked vehicle. The records for phone number 901-246-6205 indicate the person in possession of the phone is one of the suspects responsible for the carjacking on July 25, 2022.

16. TFO Moseley further researched the **TARGET TELEPHONE** utilizing law enforcement databases and found the number to belong to an Adrian Pegues. This same cellphone number is listed for Pegues in additional police reports as far back as August 2021.

17. On May 25, 2023, a grand jury sitting in the Western District of Tennessee returned a true bill on an indictment related to carjacking and the use of a firearm in furtherance of a crime of violence naming Adrian Pegues and co-defendant Alan Key to the grand jury.

18. Pegues is currently in the custody of the United States Marshals Service.

19. TFO Moseley utilized law enforcement databases and verified the cellphone provider for the **TARGET TELEPHONE** to be **AT&T**.

20. In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data

5

identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21. Based on my training and experience, I know that the telephone service providers can collect per-call measurement data, which each provider may refer to with a specific name. Verizon refers to this data as Real-Time Tool ("RTT"). T-Mobile refers to the data as timing advance. AT&T refers to the data as NELOS. Sprint refers to the data as per call measurement data ("PCMD"). The per-call measurement data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell site data.

22. Based on my training and experience, I know that **AT&T** can collect cell-site data about the **TARGET TELEPHONE**. I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

23. Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of

6

business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET TELEPHONE** user or users and may assist in the identification of co-conspirators and/or victims.

24. Part C of Attachment B requests the contents of all electronic communications located in AT&T's computer systems in directories or files owned or controlled by the accounts identified in Attachment A. These stored files, covered by 18 U.S.C. § 2703(a), will help ascertain the scope and nature of the activity conducted by the subscriber, owner, and/or controller of the directories or files.

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

26. I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **AT&T**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

27. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

APRIL N. MOSELEY
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on May 30, 2023.

s/Tu M. Pham

TU M. PHAM
CHIEF UNITED STATES MAGISTRATE JUDGE